UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

STEPHANIE M. HOGAN,

                    Plaintiff,              NO. CV-06-5078-EFS

        v.

MICHAEL R. OGDEN, LINDA                     **ORDER ENTERING COURT'S RULINGS**
BEATH, and CORWIN KING, in                  **FROM HEARING ON JULY 1, 2008**
their individual and official
capacities,

                    Defendants.

     A hearing occurred in the above-captioned matter on July 1, 2008, in Richland.  Katrin E. Frank appeared on behalf of Plaintiff Stephanie M. Hogan; Suzanne R. Parisien appeared on behalf of Defendants Michael R. Ogden, Linda Beath, and Corwin King.  Before the Court was Defendants' Motion for Summary Judgment *Re* Federal Claims and State Law Claims. (Ct. Rec. 76.)  After reviewing the submitted material, relevant authority, and hearing oral argument, the Court is fully informed and grants and denies in part Defendants' summary judgment motion.  The reasons for the Court's Order are set forth below.

ORDER ~ 1

1                              **BACKGROUND**

2    **I. Undisputed Facts[1]**

3        Plaintiff was enrolled as a student at Central Washington University

4    ("CWU"), a public entity that receives federal monies.

5    (Ct. Rec. 98 at 1.)  During the 2003 Fall Quarter, which began September

6    24, 2003, Plaintiff enrolled in COM 440.  *Id.* at 2.  COM 440 is a senior-

7    level course designed to introduce students to video production skills

8    used to communicate corporate and/or institutional goals.  *Id.*  The class

9    combines lectures, exercises, and projects in order to expose students

10   to a full range of video production techniques.  *Id.*  Students are

11   evaluated through quizzes (10% of grade), individual and group

12   assignments (55% of grade), equipment certification tests (10% of grade),

13   attendance and participation (5% of grade), and a final exam (20% of

14   grade).  *Id.*  The class meets at CWU's Ellensburg campus on Mondays and

15   Wednesdays for two (2) hours.  *Id.*

16       Attendance is important.  Page 1 of the Syllabus, which is provided

17   to students on the first day, provides in pertinent part:

18           In addition, students are expected to attend class regularly,
             to be well-prepared, and to complete all assignments by the
19           designated due dates.  There will be NO EXTENSIONS FOR
             ASSIGNMENTS AND NO INCOMPLETES GIVEN - SO DON'T ASK!
20
21   *Id.* at 3 (emphasis in original).  COM 440's attendance policy allows

22   students with medical documentation to receive excused absences (no

23   effect on a student's grade) for missing class.  *Id.*  Defendant Ogden,

24   _____

25       [1]These facts are drawn from the parties' Joint Statement of Material

26   Facts.  (Ct. Rec. 98.)

ORDER ~ 2

1  COM 440's professor, advised students that other absences are excusable
2  with advance permission and a valid reason.  *Id.*

3      Between September 24 and October 27, 2003, Plaintiff attended every
4  COM 440 class and completed every assignment.  *Id.*  On October 27, 2003,
5  however, Plaintiff informed Defendant Ogden that she needed to miss class
6  (and the scheduled equipment certification test) that day because she was
7  eight (8) months pregnant,  experiencing "problems," and needed to visit
8  her doctor in Richland, Washington.  (Ct. Rec. 82 at 65.)  Defendant
9  Ogden was apologetic about Plaintiff's situation and asked her to bring
10 a doctor's note to excuse the absence.  *Id.*  Defendant Ogden also
11 informed Plaintiff that the equipment certification test would be
12 postponed anyway because several students were missing the class on pre-
13 approved grounds.  *Id.*  That same day, Plaintiff's doctor placed her on
14 bed rest.  (Ct. Rec. 98 at 4.)

15     Defendant Ogden administered COM 440's equipment certification test
16 on October 29, 2003 - Plaintiff did not take the test.  *Id.*  The
17 equipment certification test is required in order to work on the group
18 project, which comprises 55% of a student's grade and involves producing
19 a finished video of corporate marketing quality.  (Ct. Recs. 82 at 55,
20 57.)
21 \\
22 \\
23 \\
24 \\
25
26

ORDER ~ 3

**II. Disputed Facts**[2]

After being placed on bed rest, Plaintiff emailed Defendant Ogden on November 4, 2003, and asked if she could complete the equipment certification test at home. (Ct. Rec. 82 at 63.) Plaintiff indicated that she was prepared but simply unable to travel due to her pregnancy-related complications. *Id.* at 63. Defendant Ogden responded on November 5, 2003, and strongly recommended that Plaintiff withdraw from COM 440 based on hardship and re-enroll for the Winter Quarter. He noted that her absences were placing an unnecessary burden on her production group and that she risked failing the class. *Id.* at 64.

Plaintiff responded to Defendant Ogden's email that day. *Id.* at 65. She indicated that her group did not object to her absence. In fact, without Defendant Ogden's knowledge, her group helped her stay involved despite her absence. One member, Aja Albiar, took notes for Plaintiff during class. (Ct. Rec. 84 at 2.) At another point, members from Plaintiff's group traveled to her home to work on the group project. *Id.* at 3.

Wanting to complete COM 440, Plaintiff proposed two solutions to make up the equipment certification test: 1) a student could proctor the test while she was on bed rest; or 2) her mother could drive her to CWU's campus in eight (8) days to take the test (when Plaintiff's doctor anticipated releasing her from bed rest). (Ct. Rec. 82 at 66, 70.)

---

[2]At summary judgment, the facts are set forth in a light most favorable to the nonmoving party - here, that is Plaintiff. *Leslie v. Grupo ICA,* 198 F.3d 1152, 1158 (9th Cir. 1999).

ORDER ~ 4

Defendant Ogden responded five (5) days later - he rejected Plaintiff's solutions, noting that Plaintiff had not completed much work to-date and could not possibly pass the class. *Id.* at 66. He recommended that "[i]t would be in everyone's best interest if [she withdrew] from the class." *Id.* Defendant Ogden was unaware that, after being placed on bed rest, Plaintiff actively contributed to her group. (Ct. Recs. 84 at 10; 92 at 9.) She helped develop the video's concept and create the script. (Ct. Rec. 84 at 3.) She also created the video's storyboard (a series of 3x5 cards that describe how the video's still shots should be filmed).

On November 10, 2003, Aja Albiar emailed Defendant Ogden seeking to clarify the group's status because Plaintiff had not taken the certification test (a requirement for her to work on the group project). *Id.* at 4. Defendant Ogden encouraged Plaintiff's group to drop her from the project because she was hindering the production process. *Id.* at 5. Aja Albiar and Amy Gegoux, two group members, informed Defendant Ogden that they did not want to remove Plaintiff as long as she could complete the equipment certification test. *Id.* at 4. Defendant Ogden responded that the group needed to move forward without her. *Id.* at 5. Plaintiff subsequently withdrew from COM 440. (Ct. Rec. 82 at 75.)

On November 13, 2006, Plaintiff filed a complaint alleging that Defendant Ogden failed to accommodate her pregnancy-related absence from class. On May 2, 2008, Defendants filed the summary judgment motion now before the Court. (Ct. Rec. 76.)

ORDER ~ 5

**Discussion**

**I. Summary Judgment Standard**

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Once a party has moved for summary judgment, the opposing party must point to specific facts establishing that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). If the nonmoving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant the summary judgment motion. *Id.* at 322. "When the moving party has carried its burden of [showing that it is entitled to judgment as a matter of law], its opponent must do more than show that there is some metaphysical doubt as to material facts. In the language of [Rule 56], the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986) (citations omitted) (emphasis in original opinion).

When considering a motion for summary judgment, a court should not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). This does not mean that a court will accept as true assertions made by the non-moving party that are flatly contradicted by the record.

*See Scott v. Harris,* 127 S. Ct. 1769, 1776 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

**II. Federal Claims**

    A.    <u>Title II of the Americans with Disabilities Act ("ADA") & Section 504 of the Rehabilitation Act</u>

Defendants argue that Plaintiff's Title II and Section 504 discrimination claims fail as a matter of law because Plaintiff does not have a recognized disability and, even if she did, her requested accommodations were unreasonable.  (Ct. Rec. 78 at 2.)  Plaintiff counters that pregnancy-related complications constitute "disabilities" for ADA purposes and that Defendant Ogden made no effort to accommodate her disability.  (Ct. Rec. 85 at 6.)

    Title II of the ADA provides, in pertinent part:

> no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132 (2008).  Title II's protections extend to publicly-funded higher education institutions such as CWU.  *See id.* at § 12131(1)(B); *Zukle v. Regents of the Univ. of Cal.,* 166 F.3d 1041, 1045 (9th Cir. 1999).

    Title II mirrors Section 504 of the Rehabilitation Act, which states:

ORDER ~ 7

> No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 794 (2008).

To establish a *prima facie* disability discrimination case under the ADA or the Rehabilitation Act ("Acts"), a plaintiff must show that (1) she is disabled under the Acts; (2) she is "otherwise qualified" to complete COM 440, i.e., she can meet the class's essential eligibility requirements, with or without reasonable accommodation; (3) she was dismissed solely because of her disability; and (4) CWU receives federal financial assistance (for the Rehabilitation Act claim), or is a public entity (for the ADA claim). *Zukle,* 166 F.3d at 1045.[3]

The parties do not dispute that CWU is a public entity that receives federal monies. (Ct. Rec. 98 at 1.) The remaining elements are in dispute and will be addressed in turn.

### 1. Recognized Disability

Defendants insist that temporary bed rest due to pregnancy-related complications is not a recognized disability under the Acts. (Ct. Rec. 78 at 6.) Plaintiff disagrees, citing three (3) district court opinions that state otherwise. (Ct. Rec. 85 at 5.)

---

[3]In *Zukle,* the Ninth Circuit noted that, because the rights and obligations created by the ADA and the Rehabilitation Act are largely identical, the same analysis applies to claims brought under both statutes. 166 F.3d at 1045 n.11.

ORDER ~ 8

1    The ADA's relevant definition of "disability" is "a physical or
2    mental impairment that substantially limits one or more of the major life
3    activities . . . ."  42 U.S.C. § 12102; *Kaplan v. City of N. Las Vegas,*
4    323 F.3d 1226, 1231 (9th Cir. 2003).  According to the ADA's accompanying
5    regulations, a physical or mental impairment is a physiological disorder
6    or condition that affects one or more of a listed group of body systems,
7    including the reproductive system.  *See* Regulations to Implement the
8    Equal Employment Provisions of the Americans with Disabilities Act, 29
9    C.F.R. § 1630.2(h)(1) (1996).[4]

10    Major life activities include, *inter alia,* "walking, breathing,
11    learning, and working."  *Id.*  An individual faces a substantial
12    limitation if she is "significantly restricted as to the condition,
13    manner, or duration under which [she] can perform a particular major life
14    activity as compared to the condition, manner, or duration under which
15    the average person in the general population can perform that same major
16    life activity."  *Id.* § 1630.2(j).

17    Courts have generally held that pregnancy, and pregnancy-related
18    complications, do not qualify as "disabilities" under the Acts.  *Minott*
19    *v. Port Auth. of N.Y. & N.J.,* 116 F. Supp. 2d 513, 525 (S.D.N.Y. 2000)
20    (finding a miscarriage is not a disability under the ADA); *LaCoparra v.*

_____

22    [4]The Court recognizes that these regulations pertain to Title I of
23    the ADA, which concerns employment discrimination.  While the present
24    facts do not involve an employment discrimination scenario (Plaintiff is
25    suing under Title II of the ADA), these regulations and the related case
26    law are nevertheless instructive.

*Pergament Home Ctrs., Inc.,* 982 F. Supp. 213, 228 (S.D.N.Y. 1997) (holding that a woman granted nine-month leave of absence for pregnancy-related complications was not considered disabled); *Tsetseranos v. Tech Prototype, Inc.,* 893 F. Supp. 109, 119 (D. N.H. 1995) (plaintiff out of work for several days due to pregnancy complicated by ovarian cysts was not disabled); *Gudenkauf v. Stauffer Communications, Inc.,* 922 F. Supp. 465, 474 (D. Kan. 1996) (typical pregnancy complications are not disabilities).[5]

Circumstances do exist, however, where pregnancy-related complications form the basis for a "disability" finding under the ADA. *See, e.g., Darian,* 980 F. Supp. at 77 (finding at summary judgment stage that late-term severe pain and paralyzing uterine contractions

---

[5]These cases are distinguishable because they are based on employment discrimination scenarios under Title I of the ADA, not access to and accommodations in education under Title II of the ADA. *See Darian v. University of Massachusetts,* 980 F. Supp. 77, 86 (D. Mass. 1997). As a result, Title I regulations, which state that "pregnancy and related medical conditions are not 'disabilities' as that term is defined by the ADA," are not applicable here. *Id.* Moreover, federal courts can comfortably prohibit the ADA's extension to pregnancy under Title I because other employment causes of action for pregnancy discrimination exist. *See* Title VII, 42 U.S.C. § 2000(e)-2(a), and the Pregnancy Discrimination Act, 42 U.S.C. § 2000e(k). These causes of action are not available under Title II. *See id.*

ORDER ~ 10

constituted a disability under the ADA); *Hernandez v. City of Hartford,* 959 F. Supp. 125 (D. Conn. 1997) (finding at summary judgment stage that premature onset of labor that could only be controlled by medication created genuine factual issues as to whether the plaintiff was disabled); *Patterson v. Xerox Corp.,* 901 F. Supp. 274 (N.D. Ill. 1995) (finding that the plaintiff's alleged disability of pregnancy-related back pain was sufficient to survive dismissal).

What these cases instruct is that, at summary judgment stage, evidence of the abnormal body functioning during pregnancy creates a genuine factual issues for the jury. Here, Plaintiff experienced late-term pregnancy complications. Her cervix dilated eight (8) weeks early and she went into labor (5) weeks early. These complications necessitated bed rest for several weeks. (Ct. Rec. 85 at 5.) Because pre-term labor is not a function of normal pregnancy, and bed rest is not required during a normal pregnancy, it is a jury question as to whether Plaintiff's pregnancy constituted a physical impairment substantially limiting the major life activity of walking, a disability under Title II of the ADA.[6]

## 2. Reasonable Accommodation & Otherwise Qualified

Once a plaintiff makes a *prima facie* showing of disability under the Acts, then she bears the initial burden of producing evidence both that a reasonable accommodation exists and that this accommodation "would

---

[6]The Court is also mindful that the ADA is a remedial statute that should be construed broadly. *See Hason v. Med. Bd.,* 279 F.3d 1167, 1172 (9th Cir. 2002).

ORDER ~ 11

enable [her] to meet the educational institution's essential eligibility requirements." *Wong v. Regents of the Univ. of Cal.,* 192 F.3d 807, 816 (9th Cir. 1999). "Production of such evidence shifts the burden to the university to produce rebuttal evidence that either (1) the suggested accommodation is not reasonable (because it would substantially alter the academic program), or (2) that the student is not qualified (because even with the accommodation, the student could not meet the institution's academic standards)." *Id.* at 817. In analyzing the educational institution's response, the Court may grant the institution's decision deference if the evidence in the record persuades the Court that the institution meets the applicable standard. *See Zukle,* 166 F.3d at 1047.

### i. <u>Deference</u>

Deference to a university's judgment is generally appropriate because courts "are 'ill-equipped,' as compared with experienced educators, to determine whether a student meets a university's "reasonable standards for academic and professional achievement." *Wong,* 192 F.3d at 817 (citations omitted).

However, Courts "must ensure that educational institutions are not disguising truly discriminatory requirements as academic distinctions. *Id.* Courts therefore defer to an educational institution's decisions when the record establishes that the school fulfilled its obligation of "seek[ing] suitable means of reasonably accommodating a handicapped person *and submit[ting] a factual record indicating that it conscientiously carried out this statutory obligation*." *Id.* (emphasis in original). This statutory obligation requires the institution to familiarize itself with the student's disability, to explore student

accommodations, and to "exercise professional judgment in deciding whether the modifications under consideration would give the student the opportunity to complete the program without fundamentally or substantially modifying the school's standards." *Id.* at 818. With the Ninth Circuit's deference standard in mind, the Court now examines whether Plaintiff's proposed accommodation was reasonable and whether Plaintiff was otherwise qualified to meet COM 440's requirements.

ii. Reasonable Accommodation

A public entity must make reasonable modifications in policies, practices, or procedures to avoid disability discrimination. *Zukle,* 166 F.3d at 1046 (citations omitted). A public entity is not required, however, "to make fundamental or substantial modifications to its programs or standards." *Id.* A reasonableness determination is a fact-specific, individualized inquiry that is determined on a case-by-case basis. *See Crowder v. Kitagawa,* 81 F.3d 1480, 1486 (9th Cir. 1996).

Here, Plaintiff proposed two (2) accommodations that would have allowed her to take the equipment certification test and continue working on the group project. The first accommodation involved a student proctor administering the test at her home in Richland; the second accommodation involved Plaintiff's mother transporting her to Ellensburg to take the test after completing bed rest. Defendant Ogden declined both proposed accommodations because they were not reasonable.

Defendant Ogden insists that Plaintiff's first proposed accommodation is not reasonable because there is no CWU policy that allows students to administer tests to other students. (Ct. Rec. 98 at 4.) This may be true, but students who did poorly on the

equipment certification test were able to take the test home and retake it "open book." (Ct. Rec. 89-2 at 70-73.)  This suggests flexibility in how the test is administered.  Importantly, there is no evidence that Defendant Ogden conscientiously considered this option - or any other option - before recommending that Plaintiff withdraw from COM 440 based on hardship.[7]  For example, Plaintiff's group requested a meeting with Defendant Ogden to discuss how they should proceed with the group project in light of Plaintiff's bed rest.  This would have been an ideal situation to discuss accommodations to keep Plaintiff involved in the group project.  No such meeting occurred.  (Ct. Rec. 89-2 at 18.)

Defendant Ogden never spoke with the group about alternative ways for Plaintiff to take the equipment certification test, to actively participate in the group project, or to complete the course. (Ct. Recs. 84 at 9; 89 at 29.)  Defendant Ogden did not conscientiously consider proposed accommodations and, therefore, his determinations are not entitled to deference.

Removing deference from the equation and viewing the facts in Plaintiff's favor, the Court cannot say as a matter of law that Plaintiff's proposed accommodations would unreasonably alter COM 440's academic program.  Defendants emphasize that COM 440 is a group-project class and Plaintiff's repeated absences undermined the hands-on class approach that illustrates "real-world productions." (Ct. Rec. 78 at 10.)

---

[7]Defendant Ogden insists that he offered Plaintiff alternative test dates. (Ct. Rec. 84 at 8.)  Plaintiff denies this assertion.  This is a factual issue for the jury.

ORDER ~ 14

But Defendants ignore evidence that Plaintiff substantially contributed to the group project until she was placed on bed rest and, even then, remained up-to-date on class lectures and drafted storyboards for the group project. (Ct. Rec. 84 at 2, 11.)  In fact, until November 10, 2003, five (5) days after her request to take the exam, Plaintiff was not hindering her group's progress. (Ct. Rec. 84 at 24.)

Plaintiff's group did not want her to leave; they even traveled to her home so that she could contribute to the group project while on bed rest. *Id.* at 4.  Because factual issues remain on whether Plaintiff's proposed accommodations would substantially alter COM 440's academic program, summary judgment is not appropriate.

### iii. Qualified Individual

Defendants next argue that Plaintiff is not qualified because, even with accommodations, her lengthy absence prevents her from meeting COM 440's academic standards. (Ct. Rec. 78 at 13.)  Plaintiff responds that there are genuine factual issues as to whether she met COM 440's essential eligibility requirements. (Ct. Rec. 85 at 6.)

The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded form participation in or be denied the benefits of services, programs, or activities of a public entity . . . ." 42 U.S.C. § 12132.  A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices . . . meets the essential eligibility requirements for the . . . participation in

ORDER ~ 15

1  programs or activities provided by a public entity." *Id.* § 12131(2).[8]

2  With respect to higher education, "qualified" is a person who "meets the

3  academic and technical standards requisite to . . . participat[e] in the

4  . . . education program or activity." 34 C.F.R. 104.3(l)(3).

5      Plaintiff concedes that she needed a reasonable accommodation in

6  order to complete COM 440. (Ct. Rec. 85 at 6.)  The issue then becomes

7  whether, with Plaintiff's proposed accommodations, there are genuine

8  factual issues that Plaintiff could meet COM 440's standards. *Wong,* 192

9  F.3d at 822.

10     As the Ninth Circuit makes clear, trial courts must first determine

11 whether Defendant Ogden's decision to urge Plaintiff's withdrawal based

12 on hardship is entitled to deference. *Id.*  The educational institution

13 must demonstrate that it "conscientiously considered all pertinent and

14 appropriate information in making its decision." *Id.*  Courts should not

15 "defer to a school's decision if the ostensibly professional, academic

16 judgment disguises truly discriminatory requirements." *Id.* at 823.

17     Here, the record demonstrates that Defendant Ogden and CWU did not

18 conscientiously consider all relevant factors before deciding that

19 Plaintiff could not complete COM 440's requirements with reasonable

20 accommodations.  For example, Disability Services is a CWU branch that

21 works to accommodate disabled students. (Ct. Rec. 84 at 19.)  Defendant

22 Ogden did not contact Disability Services to discuss how Plaintiff could

23 take the equipment certification test or otherwise complete the class.

24

25      [8] As discussed, the Rehabilitation Act is largely identical.

26 *See Wong,* 192 F.3d at 822.

ORDER ~ 16

(Ct. Rec. 89-2 at 91.)  Defendant Ogden also did not explore alternatives for administering the equipment certification test - that Plaintiff was prepared to take - so that she could continue working on the group project.  He simply rejected Plaintiff's proposed solutions and informed her that she cannot miss class and be expected to pass.  These examples alone demonstrate that Defendant Ogden did not consider all relevant factors in determining whether Plaintiff could pass COM 440. Accordingly, Defendant Ogden's determination is not entitled to deference.

Again, removing deference from the equation and viewing the facts in Plaintiff's favor, a jury could find that Plaintiff could meet COM 440's academic requirements.  True, COM 440 is a unique, group-oriented class that emphasized the stresses of "real-world productions." (Ct. Rec. 78 at 10.)  It is also true that Plaintiff missed approximately four (4) weeks out of a ten-week quarter.  But there is evidence demonstrating that she could have passed.  First, attendance is only 5% of the total grade and Plaintiff had legitimate medical reasons for her absences. (Ct. Rec. 82 at 55.)  Second, Plaintiff's class scores, while not exemplary, were acceptable.  She received a 4.6 out of 5 and a 9 out of 10 on two assignments; she also received a .9 out of 2 and a 1.3 out of 2 on two quizzes.  Third, Defendant Ogden acknowledged that it was possible for Plaintiff, despite being on bed rest, to still physically contribute to the final project by, for example, filming part of the video from her home. (Ct. Rec. 89-2 at 84.)  And fourth, until October 27, 2003 (when Plaintiff was placed on bed rest), she had attended every class, completed all assignments, and was an active participant in her

group.  (Ct. Rec. 84 at 2-4.)  Importantly, despite being on bed rest, Plaintiff managed to remain up-to-date on class notes and assisted with the group project.  *Id.* at 2, 11.  Accordingly, Plaintiff put forth sufficient evidence to create genuine factual issues that, with proposed accommodations, she could meet COM 440's standards.

### 3. Dismissed Due to Disability

Neither party briefed whether Plaintiff was removed from COM 440 solely due to her disability.  Accordingly, this is an issue for the jury.

### B. Title IX Discrimination Claim

Defendants argue that Plaintiff's Title IX discrimination claim fails because Plaintiff cannot show that she met COM 440's educational requirements.  (Ct. Rec. 78 at 14.)  Plaintiff responds that she has established a *prima facie* Title IX discrimination case. (Ct. Rec. 85 at 17.)

Title IX prohibits educational institutions from engaging in sex discrimination.  *See* 20 U.S.C. § 1681.  Several circuits courts agree that Title IX claims are analyzed under the Title VII burden-shifting analysis.  *See Lipsett v. Univ. of Puerto Rico,* 864 F.2d 881, 897 (1st Cir. 1988) (applying the Title VII burden-shifting analysis in the employment context to Title IX claim); *Johnson v. Baptist Med. Ctr.,* 97 F.3d 1070, 1072 (8th Cir. 1996) (noting that the method of evaluating Title IX gender discrimination claims is the same as those in a Title VII case); *Murray v. New York Univ. Coll. of Dentistry,* 57 F.3d 243, 248 (2d Cir. 1995) (same); *Roberts v. Colo. State Bd. of Agric.,* 998 F.2d 824, 832 (10th Cir.), *cert. denied,* 510 U.S. 1004 (1993) (same); *Preston v.*

1   *Va. ex rel. New River Cmty. Coll.,* 31 F.3d 203, 207 (4th Cir. 1994)

2   (agreeing that Title VII consideration shape the contours of rights under

3   Title IX).[9]   The Ninth Circuit has not addressed this issue.   Without

4   controlling law, the Court turns to other circuit authority for guidance

5   and finds application of the Title VII burden-shifting framework to Title

6   IX claims persuasive.[10]

7        Therefore, to survive summary judgment on a Title IX claim, a

8   plaintiff must first establish a *prima facie* discrimination case.

9   *Lipsett,* 864 F.2d at 899; *Burch,* 433 F. Supp. 2d at 1125-26; *Llamas v.*

10  *Butte Cmty. Coll. Dist.*, 238 F.3d 1123, 1126 (9th Cir. 2001).   If the

11  plaintiff establishes a *prima facie* case, then the burden shifts to the

12  defendant to articulate a legitimate nondiscriminatory reason for its

13  adverse action.  *See Llamas,* 238 F.3d at 1126.   To prevail, the plaintiff

14  must then show that the defendant's purported reason for the adverse

15  action is merely pretext for a discriminatory motive.   *Id.*  Although the

16  burden shifts back and forth between the parties, the plaintiff bears the

17  ultimate burden of demonstrating that the defendant engaged in

18

19       [9]*But see Franklin v. Gwinnett County Pub. Schs.,* 911 F.2d 617, 622

20  (11th Cir. 1990) (declining to apply Title VII principles to Title IX),

21  *rev'd on other grounds,* 503 U.S. 60 (1992).

22       [10]At least two Ninth Circuit district courts addressed this issue -

23  both concluded that the Title VII burden-shifting analysis applies to

24  Title IX cases.  *See Burch v. Regents of the Univ. of Cal.,* 433 F. Supp.

25  2d 1110, 1125-26 (E.D. Cal. 2006); *Doe v. Petaluma City Sch. Dist.,* 949

26  F. Supp. 1415, 1422 (N.D. Cal. 1996).

ORDER ~ 19

1   intentional discrimination.  *See Reeves v. Sanderson Plumbing Prod.,*
2   *Inc.,* 530 U.S. 133, 143 (2000) (citations omitted).

3           1. *Prima Facie* Case

4           Defendant argues that Plaintiff cannot demonstrate a *prima facie*
5   case because she did not meet COM 440's academic requirements. (Ct. Rec.
6   78 at 14.)    Plaintiff insists that she can meet her burden.
7   (Ct. Rec. 85 at 17.)

8           To establish a *prima facie* Title IX discrimination case, a plaintiff
9   must show that (1) she was a member of a protected class; (2) she was
10  performing the academic requirements at a level well enough to meet her
11  educator's legitimate expectations; (3) she suffered adverse treatment;
12  and (4) the educational program continued to instruct and credit other
13  students. *Lipsett,* 864 F.2d at 897; *Burch,* 433 F. Supp. 2d at 1126.
14  This showing is minimal and does not even need to rise to the level of
15  a preponderance of the evidence.  *Burch,* 433 F. Supp. 2d at 1125 n.15;
16  *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir. 1994); *see also*
17  *Sischo-Nownejad v. Merced Cmty. Coll. Dist.,* 934 F.2d 1104, 1110-11 (9th
18  Cir. 1991) ("The amount [of evidence] that must be produced in order to
19  create a *prima facie* case is very little.")

20          Elements one and four are satisfied because it is undisputed that
21  Plaintiff was pregnant - making her a protected class member[11] - and that

22  _____

23          [11]*See* 20 U.S.C. § 1681; 34 C.F.R. 106.40(b)(1) ("[a] recipient [of
24  federal funds] shall not discriminate against any student or exclude any
25  student from its education or activity including any class . . . on the
26  basis of such student's pregnancy . . . .").

ORDER ~ 20

Defendant Ogden continued to instruct and credit other students. As discussed below, Plaintiff carries her burden on the remaining elements.

As to element two, Plaintiff carries her burden of demonstrating that she met her educator's legitimate expectations. As discussed, Plaintiff did not miss a class until being placed on bed rest. Her absences due to bed rest did not affect her grade because they were medically excused. Plaintiff was also passing her class assignments. During bed rest, Plaintiff remained up-to-date on class assignments and continued to participate in the group project by creating storyboards. Her group considered her an active participant. (Ct. Rec. 84 at 6.) Importantly, Defendant Ogden was unaware of Plaintiff's actual involvement level in planning the video, producing the storyboard, helping write the dialogue, or planning the video itself. (Ct. Rec. 84 at 10.) Given Plaintiff's active involvement both before and after bed rest, she meets the minimal showing necessary to satisfy this element.

As to element three, Plaintiff carries her minimal burden of demonstrating that she suffered adverse treatment. Plaintiff risked failing COM 440 because she did not take the equipment certification test (preventing her from continuing to work on the group project). She did not take the test because she could not; that is, Defendant Ogden declined to accommodate alternative exam times or locations. Viewing the evidence in her favor, without accommodation, Plaintiff suffered adverse treatment because she was forced to withdraw or risk failing the class.

Moreover, Defendant Ogden accommodated other students during the written certification re-take process by setting up special exam times and allowing students to take the test open-book. Defendant Ogden

vigorously challenges the assertion that accommodating other students during the re-take process indicates special treatment because students are first required to pass the hands-on certification before taking the written exam. Defendant argues that, in Plaintiff's case, she did not take the hands-on exam, so she was not entitled to accommodations such as re-takes. This argument is not persuasive. It is not just that Defendant allowed students who failed the written test to re-take it open book; it is that Defendant Ogden accommodated students' schedules - he made no such effort for Plaintiff. This suggests adverse treatment.

Considering the minimal showing needed to establish a *prima facie* case, Plaintiff meets her burden. *Burch,* 433 F. Supp. 2d at 1125 n. 15; *Wallis,* 26 F.3d at 889.

### 2. Legitimate Nondiscriminatory Reason

Because Plaintiff meets the low standard for establishing a *prima facie* Title IX discrimination case, the Court proceeds to the burden-shifting analysis' second step. In step two, the burden shifts to defendants to demonstrate that they had a legitimate, nondiscriminatory reason for their adverse action. *Burch,* 433 F. Supp. 2d at 1128; *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506-07 (1981).

Here, Defendants' arguments focused on Plaintiff's inability to establish a *prima facie* case; as a result, they did not address the remaining elements in the Title IX burden-shifting analysis. Because the Court found Plaintiff meets her *prima facie* showing and Defendant did not address the remaining elements under the Title IX burden-shifting analysis, the Court need not proceed further and finds factual issues

ORDER ~ 22

remain for trial.   Summary judgment on Plaintiff's Title IX claim is denied.

  C. <u>Suit Under 42 U.S.C. § 1983</u>

   1. <u>Equal Protection Clause Claim</u>

  Defendants argue that Title IX supplants § 1983 suits against school officials.  (Ct. Rec. 78 at 20.)  Plaintiff responds that Title IX and § 1983 claims can co-exist in the same suit.  (Ct. Rec. 85 at 3.)

  Section 1983 does not create any substantive rights; rather, it is a vehicle whereby plaintiffs can challenge actions by government officials. *Cholla Ready Mix, Inc. v. Civish,* 382 F.3d 969, 978 (9th Cir. 2004). Section 1983 also does not provide a remedy for violations of all federal statutes.  "When the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983." *Middlesex County Sewerage Auth. v. Nat'l Sea Clammers Ass'n,* 453 U.S. 1, 20 (1981).

  While the Ninth Circuit has not decided whether Title IX supplants § 1983 suits, it has recognized that federal statutes may preclude § 1983 suits if the statutes are sufficiently comprehensive. *Dittman v. California,* 191 F.3d 1020, 1029 (9th Cir. 1999). Other circuits are split on whether Title IX subsumes a § 1983 claim.[12]

---

  [12]Four circuits hold that Title IX supplants § 1983 suits. *See Fitzgerald v. Barnstable Sch. Comm.,* 504 F.3d 165, 179-80 (1st Cir. 2007) (holding that plaintiff's § 1983 claims based upon alleged Equal Protection Clause violations were precluded by Title IX's remedial

ORDER ~ 23

1    To date, seven district courts in the Ninth Circuit considered this

2  \\

3  \\

4  \\

5  \\

6  \\

7  \\

8  \\

9  \\

10  \\

11  _____

12  scheme); *Bruneau v. S. Kortright Cent. Sch. Dist.,* 163 F.3d 749, 758 (2d

13  Cir. 1998) ("[A] § 1983 claim based on the Equal Protection Clause is

14  subsumed by Title IX."); *Waid v. Merrill Area Pub. Sch.,* 91 F.3d 857, 862

15  (7th Cir. 1996) (holding that plaintiff may not claim that a single set

16  of facts leads to causes of action under both Title IX and § 1983);

17  *Pfeiffer v. Marion Ctr. Area Sch. Dist.,* 917 F.2d 779, 789 (3d Cir. 1990)

18  (same).  Four circuits hold otherwise.  *See Communities for Equity v.*

19  *Mich. High Sch. Athletic Ass'n,* 459 F.3d 676, 683-86 (6th Cir. 2006)

20  (holding that Title IX has no preemptive power over § 1983 claims);

21  *Crawford v. Davis,* 109 F.3d 1281, 1284 (8th Cir. 1997) (same); and

22  *Seamons v. Snow,* 84 F.3d 1226, 1233 (10th Cir. 1996), *aff'd in part,*

23  *rev'd in part,* 206 F.3d 1021 (10th Cir. 2000) (holding that plaintiff has

24  independent rights under Title IX and under § 1983); and *Lakowski v.*

25  *James,* 66 F.3d 751 (5th Cir. 1995) (same).

26  ORDER ~ 24

1  issue - five determined that Title IX supplants § 1983 suits[13]; two did
2  not.[14]

3      The Court finds that Title IX supplants Plaintiff's § 1983 Equal
4  Protection claim.  In determining if Title IX supplants § 1983 suits,
5  courts consider (1) whether plaintiffs' Title IX claims are "virtually
6  identical" to their constitutional claims, and (2) whether the remedies
7  provided in Title IX indicate that Congress intended to preclude reliance
8  on § 1983.  *Smith v. Robinson,* 468 U.S. 992, 1009 (1984); *Brust,* 2007 U.S.
9  Dist. LEXIS 91303 at *13.

10     Here, prong one is satisfied.  Plaintiff alleges that Defendants
11  violated the Equal Protection Clause by treating her differently than her
12  male counterparts - this is the very same right Congress intended to
13  protect under Title IX.  *See Cannon v. Univ. of Chicago,* 441 U.S. 677, 703
14  (1979).  Indeed, Plaintiff's § 1983 claim is based upon the same factual
15  predicates as her Title IX claim.

16

17  _____

18  [13]*See Brust v. Regents of the Univ. of Cal.,* 2007 U.S. Dist. LEXIS
19  91303 at *13 (E.D. Cal. Dec. 12, 2007); *Power ex rel. Power v. Gilbert
20  Pub. Sch.,* 2008 WL 2113571 at *3 (D. Ariz. May 16, 2008); *Mansourian v.
21  Bd. of Regents,* 2007 U.S. Dist. LEXIS 77534 (E.D. Cal. Oct. 18, 2007);
22  *Drews v. Joint Sch. Dist. No. 393,* 2006 U.S. Dist. LEXIS 21695 (D. Idaho
23  Mar. 29, 2006); *Henkle v. Gregory,* 150 F. Supp. 2d 1067 (D. Nev. 2001).

24  [14]*See Nicole M. v. Martinez Unified Sch. Dist,* 964 F. Supp. 1369
25  (1997); *Oona R.-S. by Kate S. v. Santa Rosa City Sch.,* 890 F. Supp. 1452
26  (1995).

ORDER ~ 25

1    Prong two is also satisfied.  Title IX is a comprehensive remedial

2    scheme that provides individuals with a private cause of action and

3    damages.  *Id.* at 709; *Bruneau,* 163 F.3d at 756; *Franklin v. Gwinnett*

4    *County Pub. Schs.,* 503 U.S. 60, 76 (1992).  And as the Supreme Court has

5    articulated, a statute that provides a private means of redress is

6    "ordinarily an indication that Congress did not intend to leave open a

7    more expansive remedy under § 1983."  *City of Rancho Palos Verdes v.*

8    *Abrams,* 544 U.S. 113, 121 (2005).

9    This conclusion is consistent with several circuit courts and the

10   majority of Ninth Circuit district courts that considered this issue.  The

11   two Ninth Circuit district courts that held otherwise are older decisions

12   that lacked the Supreme Court's guidance in *City of Rancho Palos Verdes.*

13                  2. <u>Substantive and Procedural Due Process Claims</u>

14   The related and more difficult question is whether Plaintiff's Title

15   IX claim supplants her substantive and procedural due process claims as

16   well.  The circuit courts holding that Title IX supplants constitutional

17   claims under § 1983 did so in the context of Equal Protection Clause

18   claims, not Due Process Clause claims.  *See* supra footnote 12.[15]  But the

19   ────────────────────

20   [15]The Sixth Circuit did address this issue and concluded a

21   plaintiff's Title IX claim does not supplant a substantive due process

22   claim.  *See Lillard v. Shelby County Bd. of Educ.,* 76 F.3d 716, 723 (6th

23   Cir. 1996).  The Sixth Circuit's holding in *Lillard* is unremarkable

24   considering it sides with the Fifth, Eighth, and Tenth Circuit's

25   viewpoint that Title IX suits do not supplant § 1983 claims under any

26   circumstances.

ORDER ~ 26

First, Second, Third, and Seventh Circuits intended their holdings to extend beyond the Equal Protection Clause and apply to all constitutional claims under § 1983. *See, e.g., Waid,* 91 F.3d at 862. In fact, the Third and Seventh Circuits agree that the key focus is whether a plaintiff claims a single set of facts leads to causes of action under both Title IX and § 1983. *Id.; Williams,* 998 F.2d at 176. If so, Title IX supplants the constitutional claim under § 1983. *Id.*

Here, Plaintiff's substantive and procedural due process claims arise out of a single set of facts; specifically, Defendant Ogden's failure to accommodate Plaintiff's pregnancy-related condition interfered with her fundamental right to bear children. Accordingly, Title IX supplants Plaintiff's substantive and due process claims as well - her remedy lies with Title IX.

In sum, Plaintiff's section 1983 remedies are subsumed by Title IX. The Court, therefore, need not engage in a qualified immunity analysis.

## III. State Claims

A. <u>Plaintiff's Washington Law Against Discrimination ("WLAD") Claim</u>

Defendants argue that Plaintiff's WLAD claim fails because Washington does not recognize pregnancy-related discrimination claims brought under a theory of failure to accommodate a disability. (Ct. Rec. 79 at 3.) Plaintiff responds that Washington's lack of recognition is limited to employment scenarios and does not extend to CWU, which is a place of public accommodation. (Ct. Rec. 86 at 9.)

RCW 49.60.030 states, in pertinent part, that:

the right to be free from discrimination because of sex . . . or the presence of any . . . physical disability is recognized as and declared to be a civil right. This right shall include, but

not be limited to . . . the right to the full enjoyment of any
of the accommodations, advantages, facilities, or privileges of
any place of public resort, accommodation, assemblage, or
amusement . . . .

RCW 49.60.030 (1)(b) (2008). Public education institutions are considered
places of public resort and accommodation. WAC 162-28-030 (2008).

In *Hegwine v. Longview Fibre Company, Inc.*, 162 Wn.2d 344, 349
(2007), the Washington Supreme Court determined that neither pregnancy nor
pregnancy-related conditions qualify as "disabilities" under the WLAD.
The effect is that pregnancy-related employment discrimination claims "are
to be analyzed as matters of sex discrimination and are not subject to an
accommodation analysis like that utilized in the disability context." *Id.*

Plaintiff insists that *Hegwine* is inapposite because its holding is
limited to employment scenarios and does not apply to public accommodation
cases. (Ct. Rec. 86 at 10.) For support, Plaintiff points to the Revised
Code of Washington.

RCW 49.60.040 defines "disability" as "the presence of a . . .
physical impairment that . . . [i]s medically cognizable or diagnosable
. . . whether it is temporary or permanent." RCW 49.60.040(25)(a)(i)-(b).
The term "impairment" includes "any physiological disorder, or condition
. . . that affect[s] . . . the reproductive system."
RCW 49.60.040(25)(c)(i). Plaintiff concludes that, in an academic setting
and outside an employment scenario, pregnancy-related conditions are a
disability, making an accommodation analysis appropriate. There is no
case law to support Plaintiff's position.

The Washington State Legislature's definition of disability, like the
district court in *Hernandez,* conceivably covers Plaintiff's pregnancy-

ORDER ~ 28

related condition of pre-term labor. *See supra,* 959 F. Supp. at 130.
What sets the present facts apart, however, is that the Washington Supreme
Court specifically stated that pregnancy and pregnancy-related conditions
are not disabilities under Washington law. *Hegwine,* 162 Wn.2d at 349.
True, the Washington Supreme Court made this statement while analyzing RCW
49.60.180 and its related interpretive regulations in an employment law
setting. But nothing in the *Hegwine* opinion indicated that this statement
was limited to only employment scenarios. *See Hegwine,* 162 Wn.2d at 349.

Extending the Washington Supreme Court's disability determination
is logical: if Plaintiff's pregnancy-related condition is not a disability
subject to an accommodation analysis in the employment context, it
logically follows that Plaintiff's pregnancy-related condition is not a
disability subject to a public accommodation analysis in the academic
context. Irrespective of context, pregnancy and pregnancy-related
conditions are not disabilities subject to an accommodation analysis.
Accordingly, the proper course is to examine Plaintiff's WLAD claim as a
sex discrimination case. Accordingly, Plaintiff's pregnancy-related
condition is not subject to an accommodation analysis under the WLAD and
is properly treated as a sex discrimination claim.

WLAD sex discrimination claims are analyzed using the Title VII
burden-shifting analysis. *See Marquis v. City of Spokane,* 130 Wn.2d 97,
113 (1996); *Hegwine,* 162 Wn.2d at 348.

Viewing the evidence in Plaintiff's favor, genuine factual issues
exist as to whether Plaintiff has a WLAD sex discrimination claim. The
Court previously engaged in a Title VII analysis with respect to
Plaintiff's Title IX claim and found that Plaintiff carried her burden.

The same outcome is appropriate for Plaintiff's WLAD sex discrimination claim because the same burden-shifting analysis applies.

B. <u>WAC 106-72-025</u>

Defendants argue that Plaintiff's claim under WAC 106-72-025 is properly dismissed because this regulation does not create a cause of action. (Ct. Rec. 79 at 4.) Plaintiff responds that WAC 106-72-025 creates an implied cause of action. (Ct. Rec. 86 at 14.)

WAC 106-72-025 states, in pertinent part:

> Central Washington University will provide students with equal access to all programs and services on the basis of merit without regard to . . . sex [or] . . . disability . . . .
>
>  . . . .
>
> No member of the university community shall treat students differently because of their . . . sex [or] . . . disability (except to provide reasonable accommodation) . . . .

WAC 106-72-025 (2008). Washington courts recognize an implied cause of action in a statute or regulation when: (1) the plaintiff is within the class for whose "especial" benefit the statute was enacted; (2) legislative intent, explicitly or implicitly, supports creating or denying a remedy; and (3) implying a remedy is consistent with the underlying purpose of the legislation. *Bennett v. Hardy,* 113 Wn.2d 912, 920-21 (1990); *Linville v. State,* 137 Wn. App. 201, 211 (2007). No cause of action should be implied when the Legislature has provided an adequate remedy in the statute. *Id.*

Plaintiff meets *Bennett's* first requirement. WAC 106-72-025 was promulgated to address, *inter alia,* discrimination against CWU students based on sex or disability.

ORDER ~ 30

1    Plaintiff does not, however, meet *Bennett's* second requirement.  As
2    Plaintiff correctly points out, legislative intent for WAC 106-72-025 is
3    difficult to find.  The regulation's authority is derived from RCW Title
4    28B, which addresses higher education institutions.  Plaintiff insists
5    that CWU, through authority delegated to it by the Legislature, would not
6    enact a regulation addressing student discrimination if it did not intend
7    for students to enforce that right.  *See Wingert v. Yellow Freight Sys.,*
8    146 Wn.2d 841, 850 (2002).  While this may be true, when the Legislature
9    enacted RCW 28B.35.120 and RCW 28B.10.528 (the statutory authority for
10   the regulation in question), it omitted regulation violations as a basis
11   for a cause of action.  The regulation is silent on this point as well.
12   Courts should adhere to the legislature's plain intent and "not imply a
13   cause of action where one does not exist."  *Wingert,* 146 Wn.2d at 855
14   (Alexander, C.J. dissenting).

15       Accordingly, WAC 162-72-025 does not create an implied cause of
16   action.  Moreover, Plaintiff has a cause under the WLAD - she is not
17   without remedy.

18       C. <u>Negligent and Intentional Infliction of Emotional Distress</u>

19       Based upon a stipulated motion, Plaintiff's negligent and
20   intentional infliction of emotional distress claims are dismissed with
21   prejudice under Federal Rule of Civil Procedure 41.  (Ct. Rec. 90.)

22       Accordingly, **IT IS HEREBY ORDERED:**

23       1. Defendants' Motion for Summary Judgment *Re* Federal Claims and
24   State Law Claims **(Ct. Rec. 76)** is **GRANTED IN PART** (section 1983 claims and
25   WAC 106-72-025 implied cause of action) and **DENIED IN PART** (remainder).

26

ORDER ~ 31

1        2. The parties' Stipulated Motion to Dismiss Claims of Negligent and

2    Intentional Infliction of Emotional Distress Pursuant to Federal Rule of

3    Civil Procedure 41(a) **(Ct. Rec. 90)** is **GRANTED.**

4        **IT IS SO ORDERED.**  The District Court Executive is directed to enter

5    this Order and distribute copies to counsel.

6        **DATED** this ____30th____ day of July 2008.

7

8                              S/ Edward F. Shea
                            ──────────────────────────────
                                  EDWARD F. SHEA
9                            United States District Judge

10   Q:\Civil\2006\5078.MSJ.wpd

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER ~ 32